WILLIAMS, Judge.
Defendants Raul and Grace Quan are Guatemalan citizens. On October 21, 1983, the Immigration and Naturalization Service detained the Quans. Raul Quan was charged with overstaying the time allotted in this country on his visa, and Grace Quan was charged with providing inaccurate information on her application to obtain a visa. The Quans remained in custody until June, 1984, at which time Raul Quan was released. Grace Quan was released in November 11, 1984. Both Quans were released after having posted bonds. A deportation hearing was held and defendants were ordered deported. This order currently is on appeal.
When the Quans were originally detained, they had three boys with them. These children were placed in the custody of the state. Three months after his release, Raul Quan obtained custody of the two older boys; the youngest child, Pablo Martin Quan, remained in foster care because of medical problems. Raul and his two older sons were given visitation rights. Before Grace Quan was released, the State of Louisiana became aware of serious charges pending against her in Guatemala. On the basis of the information it received, the state filed a motion to modify the disposition of the child in order to deny them visitation rights. The Quans apparently moved to have Pablo returned to their custody. A hearing was held in juvenile court, and the judge ordered that visitation be denied to the Quans. The record before us is somewhat sketchy due to a miscommuni-cation which resulted in the destruction of the court reporter’s notes prior to preparation of the entire transcript. A narrative has been supplied to this court by the judge below. Based upon the narrative and other evidence in the record, we conclude that the lower court was not in error in terminating the visitation rights of the Quans.
We find that the Juvenile Court did have jurisdiction over Pablo Quan. Article 15 of the Louisiana Code of Juvenile Procedure provides for jurisdiction over children who are alleged to be in need of care. Section 14 of Article 13 defines a child in need of care as a child:
(a) Whose parent inflicts, attempts to inflict, or, as a result of inadequate supervision, allows the infliction or attempted infliction of physical injury of physical injury or sexual abuse upon the child which seriously endangers the physical, mental, or emotional health of the child;
(b) Whose physical, mental, or emotional condition is substantially threatened or impaired as a result of the refusal or neglect by his parent to supply the child with necessary food, clothing, shelter treatment wither by medical care or in accordance with the tenets of a well-recognized religious method of healing with a reasonable proven record of success, counseling, or education, or as a result of the parent’s neglect or imposition of cruel punishment; however, nothing herein shall prohibit the court from ordereing medical services for the child when there is substantial risk of harm to the child’s health or welfare;
(c) Who is without necessary food, clothing, shelter, medical care, education, or supervision because of abandonment by, or the disappearance or prolonged absence of, his parent, or because of any other reason.
At the hearing, testimony was offered by a physician who stated that Pablo was suffering from rickets. Rickets is caused by either malnourishment or lack of sunshine. Although there is another type of rickets that is congenital, Pablo did not suffer from any other of the symptoms that usually accompany congenital rickets. Based upon the evidence presented by both parties, we cannot conclude that the trial court was in error in determining that Pablo was a child in need of care. The conclusion that he was suffering from non-congenital rickets is certainly borne out by the evidence, and his development of the disease would be directly due to neglect by *601 the Quans. For this reason, the Juvenile Court had jurisdiction over this matter.
The prime consideration of both the Juvenile Court and this court in this matter is the best interest of the child. La.CJ.P. art. 85. Evidence presented at the hearing showed that Pablo has been in a foster home where he is very happy. He is, understandably, attached to his foster parents and visits by the Quan family have caused him some emotional confusion. He had no “bonding” with the Quans. It was the opinion of two social workers that Pablo should remain in the care of his foster parents. This, of course, alone would be insufficient to form a basis for denying visitation rights to the parents. In re Custody of Reed, 497 So.2d 1084 (La.App. 4th Cir.1986). When considered with the other evidence presented at trial, however, we find that the trial court did act in the child’s best interests in denying visitation rights to the Quans.
There are two issues involved in this case that are the source of much confusion: (1) the exact nature of criminal charges (if any) pending against Grace Quan in Guatemala, and (2) whether the Quans are really the adoptive parents of Pablo. The state contends that Grace Quan is wanted for kidnapping and murder in Guatemala stemming from baby-selling operations which she ran in her native country. She claims that these charges were politically motivated due to one of her son’s activities with an organization viewed with disfavor by the government in power at the time. She argues that there currently is a new government in Guatemala and that these charges have been dropped. The state attempted to introduce documentary evidence at trial to substantiate these charges, but the trial court refused to consider it. At trial, the Quans attempted to introduce evidence as to the political climate in Guatemala at the time charges may have been brought against Grace Quan. The trial court did not allow the introduction of the evidence, and it is contained in the record as a proffer. The evidence supported Mrs. Quan’s claim that she had been politically persecuted and that under the new regime, charges had been dropped.
According to the record, other evidence presented by a New Orleans police officer indicated that Mrs. Quan was under investigation for baby-trafficking as well as for four murders. We note that in another proceeding some of this evidence would not have not been admissible as it is hearsay. Article 81 of the Louisiana Code of Juvenile Procedure, however, allows the trial court considerably more latitude in a disposition hearing. Keeping in mind the hearsay nature of the officer’s testimony, it seems to us that this evidence was supported to some extent by the testimony of a woman who was in direct contact with the Quans for the purposes of obtaining a child.
We also find that the issue as to the Quans’ status as adoptive parents is, at this point, not relevant. The order from the court below does not take custody away from the Quans. They are prohibited from visiting him, but the order does not purport to be a final disposition of the matter, notwithstanding the Quans’ motion to obtain custody. Furthermore, considering all of the evidence presented below, and realizing that some of it is hearsay, we are compelled to find no abuse in the juvenile judge’s ruling that it is in Pablo’s best interests that visitation rights be denied to the Quans.
AFFIRMED.
WARD, J., concurring with reasons.
REDMANN, C.J., dissenting with reasons.